IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

BRANDON SMITH                                                                 PLAINTIFF

V.                                                CIVIL ACTION NO. 3:21-CV-111-SA-RP

MOAFK ALSID                                                                 DEFENDANT

ORDER

On July 14, 2021, Brandon Smith filed his Amended Complaint [9] against Moafk Alsid. Now before the Court is Alsid's Motion to Dismiss [48]. The Motion [48] has been fully briefed. Having reviewed the parties' filings, along with the applicable authorities, the Court is prepared to rule.

*Relevant Background*

This civil action arises from violations of Title III of the Americans with Disabilities Act ("ADA").

Brandon Smith is a Mississippi resident who utilizes a wheelchair for mobility purposes and qualifies as a person with a disability under the ADA. Smith also describes himself as "an independent advocate of the rights of similarly situated disabled persons and is a 'tester' for the purpose of enforcing Plaintiff's civil rights, monitoring, determining, and ensuring whether places of public accommodation are in compliance with the ADA." [9] at p. 2.

In May 2021, Smith visited Stateline Quick-Mart, a convenience store located at 985 Stateline Road East in Southaven, Mississippi. Alsid owns and operates Stateline. Smith contends that he attempted to patronize the business but was deterred from doing so due to its non-compliance with the ADA. Smith claims that he observed "unlawful physical barriers, dangerous conditions and ADA violations" both inside and around the exterior of the building. [9] at p. 7.

Those purportedly unlawful conditions include: no van accessible parking; no visible upright signage designating accessible parking; paint delineating accessible parking was faded; insufficient clear ground space around the exterior ice machine; accessible entrance not being level; lack of designated accessible parking; interior sales counter being too high for wheelchair users; restroom door closers which close the restroom doors to quickly; and the self-serve table area being too high for wheelchair users to reach.

After visiting the Quick-Mart, Smith initiated this lawsuit. In the Amended Complaint [9], he asserted that "removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense." [9] at p. 9. In addition to the above-referenced specific violations, he asserts that Alsid has a practice of failing to maintain the business in compliance with the ADA. Smith seeks declaratory and injunctive relief.

In the pending Motion [48], Alsid contends that Smith's claims should be dismissed based upon the mootness doctrine. As noted above, Smith opposes Alsid's request.

### Analysis and Discussion

"The ADA is a 'broad mandate' of 'comprehensive character' and 'sweeping purpose' intended 'to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life.'" *Kramer v. Lakehills South, LP*, 2014 WL 51153, at *1 (W.D. Tex. Jan. 7, 2014) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001)). The ADA prohibits discrimination in three major areas of public life: (1) employment; (2) public services, programs, and activities; and (3) public accommodations. *Id*. (citing *Tennessee v. Lane*, 541 U.S. 509, 516-17, 124 S. Ct. 1978, 158 L. Ed.

2d 820 (2004)). Smith's claims concern public accommodations, which are governed by Title III of the ADA. *Id.*

As previously noted, Alsid seeks dismissal of Smith's claims based on mootness, specifically arguing that "all property conditions that allegedly failed to meet ADA accessibility standards, including additional items not referenced in the Complaint, have been addressed. . . Since there are no present violations of the ADA at Alsid's facility, this Court does not have subject matter jurisdiction over Plaintiff's moot claims, and the Complaint should be dismissed." [49] at p. 1-2.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *ESI/Employee Solutions, L.P. v. City of Dallas*, 528 F. Supp. 3d 564, 569 (E.D. Tex. Mar. 25, 2021) (quoting *Gunn v. Minton*, 568 U.S. 251, 256, 133 S. Ct. 1059, 185 L. Ed. 2d 72 (2013)). "When a case has been rendered moot, a federal court lacks constitutional authority to resolve the issues that it presents." *Id.* at 570 (citing *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 525 (5th Cir. 2008)). "Mootness occurs when a case no longer presents 'live' issues or 'the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Chafin v. Chafin*, 568 U.S. 165, 172, 133 S. Ct. 1017, 185 L. Ed. 2d 1 (2013)). Importantly, a defendant seeking to moot a claim based upon voluntary compliance bears a "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env'l Servs. (TOC), Inc.*, 528 U.S. 167, 190, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000).

Alsid attached to his Motion [48] an affidavit executed by Doug Thornton, an architect certified by the American Institute of Architects. In his affidavit, Thornton explains that he conducted an initial site review of the property and "prepared a remedial site plan drawing on

February 8, 2022, and revised it on February 28, 2022[.]" [48], Ex. 1 at p. 1. Thornton's affidavit

then states:

> 7. In summary, my firm and I conducted to the best of our ability multiple thorough site reviews of this facility and reported all of the features, within a reasonable degree of professional certainty, that were not in compliance with ADA standards in a remedial site plan drawing. My firm and I subsequently reviewed the Owner's remediation efforts on March 18, 2022, which my firm and I determined corrected all but 3 conditions identified in the Complaint, Defendant's Expert Report or the remedial site plan drawing. My firm has personally inspected and I have reviewed photographs on the three unresolved remaining items initially found to be non-compliant as of the March 18, 2022 inspection. My firm and I are now satisfied (and the attached photographs demonstrate) that all of the unresolved items listed above have been corrected according to the appropriate ADA accessibility standards.

> 8. My firm and I are satisfied to the best of our professional ability that the Defendant Alsid's property and facilities now are in *full compliance with ADA accessibility standards*.

> 9. My firm has also provided guidance to the Defendant on practices to keep the property and facilities in full compliance with ADA accessibility standards.

[48], Ex. 1 at p. 2-3 (emphasis added).

Relying on Thornton's affidavit, Alsid contends that all of Smith's concerns have now been

resolved, rendering Smith's claims moot.

In his Response Memorandum [51], Smith does not dispute that the non-compliant

conditions have been addressed but instead argues that, in addition to these specific violations, he

also asserted a claim based on Alsid's "practice of failing to maintain the Property to ensure that

it remains ADA-compliant. And Defendant has failed to show that it is absolutely clear that the

Property will remain ADA-compliant." [51] at p. 3. Smith further avers that "but for the filing of

this lawsuit, Defendant would not have done anything to rectify its non-compliance. Defendant

has produced no evidence that shows any former or future policies in place to address ADA issues

4

at the property. . . Indeed, even if Defendant possessed some form of written policy, based on the amount of ADA violations cited in both parties' expert reports, the policies had little to no effect on Defendant's conduct. Defendant's conduct warrants entry of a permanent injunction to require Defendant to ensure that the Property is, and remains, ADA-compliant." [51] at p. 3-4.

The District Court of Minnesota has recently addressed mootness in the context of Title III of the ADA. *Boitnott v. Border Foods, Inc.*, 361 F. Supp. 3d 858 (D. Minn. 2019). There, the plaintiff, who had a legal disability as defined by the ADA, sued the owner and operator of a Taco Bell restaurant (Border Foods), alleging that he "visited the restaurant in March 2018 and observed architectural barriers that deterred him from patronizing the restaurant." *Id*. at 861. The alleged violations included, an interior door that could not be opened with less than five pounds of force, an insufficient number of accessible seats, and restroom fixtures located in places which did not comply with the ADA, among other things. *Id*. The defendant then hired an auditor who visited the site and prepared a report with recommendations as to how the defendant could bring the property into compliance with the ADA. *Id*. at 862. After addressing the issues noted in the auditor's report, the defendant moved to dismiss the case, arguing that the plaintiff's claims were moot. *Id*.

The district court ultimately found the claims to be moot, nothing that "[t]he record before the Court clearly demonstrates that [the defendant] has remedied the ADA violations alleged in the amended complaint . . . These alleged ADA violations will not recur unless Defendants take affirmative steps to remove or alter the ADA-compliant doors, accessible seating, and bathroom fixtures Defendants installed, which are permanent fixtures or features." *Id*. at 866. The district court further explained:

> The senior vice president of Border Foods attests by sworn declaration that "Border Foods is committed to ensuring that its

> properties are fully-compliant with the ADA, and has invested more than $11,000 in renovations at the [restaurant] Property to-date to ensure such compliance." [The plaintiff] offers neither a factual reason nor a legal basis to assume that this statement is incorrect or that any of the now-compliant fixtures at the restaurant property will be removed or altered.

*Id*.

The district court also noted that, although the plaintiff argued that the court should enter an order "directing Defendants to modify their policies, practices, and procedures to ensure ongoing ADA compliance[,]"the plaintiff "does not identify any particular policy, practice, or procedure that Defendants have failed to reasonably modify. He instead relies on inferences derived from claimed architectural barriers that have undisputedly been remedied. This reasoning is unavailing." *Id*. at 867-68.

Other courts across the country have found claims moot in this same context. *See*, *e.g.*, *Dalton v. JJSC Prop., LLC*, 967 F.3d 909, 914 (8th Cir. 2020) (affirming district court's dismissal of plaintiff's claim as moot after the defendant "submitted photographs, schematics, and affidavits showing that it had remedied [the plaintiff's] concerns about the lack of a demarcated accessible parking spot, van spot, access aisle, and proper signage for the designated spot); *Hummel v. St. Joseph Cnty. Bd. of Com'rs*, 817 F.3d 1010, 1023 (7th Cir. 2016) (affirming district court's dismissal of ADA claims based upon mootness doctrine after the defendant brought its restrooms into ADA compliance).

Similar to the defendant in *Boitnott*, Alsid has submitted an affidavit of an architect indicating that the underlying alleged violations have now been remedied and that the "properties and facilities now are in full compliance with ADA accessibility standards." [48], Ex. 1 at p. 3. As noted above, Smith does not dispute this contention. Rather, he asserts that the case is not moot because Alsid has a practice of failing to comply with the ADA at this location and that the

violations therefore could recur. Smith instead contends that this Court should enter a permanent injunction to ensure future compliance.

To support this position, Smith cites a case from the Eastern District of California— *Johnson v. Tackett*, 272 F. Supp. 3d 1198 (E.D. Cal. 2017). In *Johnson*, the plaintiff alleged that the defendant restaurant's accessible parking spaces were inadequate and violated the ADA. *Id*. at 1200-01. The restaurant owner voluntarily repaved and restriped the accessible parking space and later moved to dismiss the plaintiff's claims as moot. *Id*. at 1201. The district court rejected the defendant's argument, holding that:

> Additionally, plaintiff has pointed to evidence convincing the court defendants' conduct may recur. Plaintiff alleged before he filed suit, defendants did not maintain their parking lot on at least two occasions. Accordingly, defendants' failure to address a claimed history of ADA non-compliance, coupled with the common sense observation that repaved and restriped parking spaces fade over time and thus require repeated resurfacing, it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *TOC, Inc.*, 528 U.S. at 189, 120 S. Ct. 693.

*Id*. at 1204 (citations omitted).

This Court finds *Johnson* distinguishable from the case at bar. In *Johnson*, the district court's decision clearly indicates that it was based upon a history of noncompliance with the ADA. Here, the Court notes the affidavit of Mohammad Alsid, who assists his father, Moafk Alsid, in managing the property. The affidavit, which was attached to a previous filing in this case, indicates in pertinent part:

> 3. The building on the Premises was constructed for my father in 2020 by Beruk Construction, LLC and Haman Construction. The building, as originally designed, included features to accommodate the disabled, such as handicap parking and a wheelchair ramp. The building was inspected by the City of Southaven for compliance with all applicable codes at the time of completion of construction, and consequently, my father and I understood at that time that the building was in full compliance with all applicable codes and

requirements. Following that initial construction, my father and I maintained the premises in a manner we believed was consistent with ADA requirements.

4. After this lawsuit was filed in May 2021, my father and I immediately began to address the issues cited in the Complaint.

. . .

6. Since receiving Mr. Thornton's report, my father and I have consulted with our contractor and Mr. Thornton's firm about all things that needed to be done to achieve full ADA compliance. Mr. Thornton's report identified accessibility issues noted in Plaintiff's expert report and also found two conditions that needed to be addressed that were not referenced in the Complaint. To date, we have moved the ice machine, poured more concrete, corrected the sales counter, moved a credit card machine to a lower level, corrected the handicap accessible signage, and put items at an accessible level near the drink dispenser.

[40], Ex. 1 at p. 1-2.

This affidavit, which has not been contradicted by any evidence, indicates that the lawsuit was filed relatively soon after the building was constructed and that, once filed, Alsid began undertaking efforts to correct the noncompliance. Furthermore, the Court notes that many of the inadequacies Smith identified were structural issues which required substantial effort and expense to correct, as evidenced by the report of Smith's own expert. *See* [48], Ex. 3 at p. 3-7 (listing inadequacies at the property and the price to bring them into compliance). Other courts have found this factor to be relevant, as it would defy logic for a business owner to incur significant expense bringing the subject property into compliance with the ADA only to revert to non-compliance. *See, e.g.*, *Moras v. Albertson's LLC*, 2016 WL 5661985, at *3 (D. Idaho Sept. 29, 2016) (quoting *Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 774 (D. Or. 1997), supplemented by 1 F. Supp. 2d 1159 (D. Or. 1998)); *Kohler v. In-N-Out Burgers*, 2013 WL 5315443, at *7 (C.D. Cal. Sept. 12, 2013); *Kohler v. Bed Bath & Beyond of Cal.*, 2012 WL 3018320, at *4 (C.D. Cal. June 27,

2012)) ("The mootness doctrine is particularly applicable to structural modifications, which are unlikely to be altered in the future. In such cases, after expending significant sums to achieve compliance, the suggestion that Defendant might revert to non-compliance is illogical, however, because doing so would actually cost Defendant more than maintaining compliance.") (internal quotation marks omitted).[1]

Finally, this Court notes that other courts across the country have held that a plaintiff is not necessarily entitled to injunctive relief mandating that a premises owner implement a proactive policy regarding ADA compliance. *See*, *e.g.*, *Murphy v. Aaron's Inc.*, 2019 WL 5394050, at *4 (D. Colo. Oct. 22, 2019) (noting that "the ADA does not require non-governmental public accommodations to implement proactive policies."); *Gaylor v. Greenbriar of Dahlonega Shopping Ctr., Inc.*, 975 F. Supp. 2d 1374, 1394-95 (N.D. Ga. 2013) ("Plaintiff's reliance on broad statements by Congress and the courts regarding the nature of discrimination against the disabled and the goals of the ADA is misplaced. None of these statements indicates that it is [a] violation of the ADA for the owner of a public accommodation not to have an official policy regarding the treatment of disabled persons, or to have an unofficial policy of helping people who need it, regardless of whether the policy is written down or communicated to anyone.") (internal citations omitted).

_____

[1] In addition to the *Johnson* case, Smith directs this Court's attention to two other cases. First, he notes that the District Court for the Northern District of California issued injunctive relief in *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831 (N.D. Cal. 2011). There, however, the district court found that the defendant was "not currently following its own access policies, *and has a history of not doing so*." *Id*. at 861 (emphasis added). The court further emphasized that "photographs admitted at trial demonstrated that in the past five years, [the defendant] had on multiple occasions not followed its policy that accessible parking spaces have required signage, that trash cans in restrooms not block dispensers, and that pipes under lavatories in restrooms be insulated." *Id*. This Court finds the history of noncompliance in *Moeller* distinguishable from the case *sub judice*. Smith also points to *Jones v. White*, a case from the District Court for the Southern District of Texas wherein that court found a permanent injunction to be appropriate. *See Jones v. White, et al.*, N.D. Tex. Cause No. 4:03-CV-02286 [140]. This Court notes, though, that *Jones* involved Title II of the ADA, a completely different title than is at issue in this case.

This Court finds that reasoning to be persuasive. Here, the uncontradicted evidence shows that, after this lawsuit was filed, Alsid undertook extensive measures to ensure that the subject property was brought into compliance with the ADA. These efforts included structural changes to the property. Additionally, there is no evidence to indicate that Alsid has a history of noncompliance with the ADA. Rather, the affidavit of his son (Mohammad Alsid) referenced above, indicates that the property had only been constructed a relatively brief time prior to the commencement of this lawsuit.

In sum, the uncontradicted evidence before the Court is that the specific deficiencies identified in Smith's Amended Complaint [9] have now been rectified, and the subject property is presently in full compliance with the ADA. And Smith has not come forward with any evidence of a history of noncompliance such that injunctive relief is warranted—his speculative argument that some issue may arise in this future is insufficient. Smith's claims are moot.

*Conclusion*

For the reasons set forth above, Alsid's Motion to Dismiss [48] is GRANTED. This CASE is CLOSED.

SO ORDERED, this the 14th day of October, 2022.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE